Patricia MORAN and Frank Moran,
Plaintiffs-Appellants,†

v.

MILWAUKEE COUNTY and Global Aerospace, Inc.,
Defendants-Respondents,

BLUE CROSS BLUE SHIELD OF ILLINOIS, Defendant.

Court of Appeals

*No. 04–0709. Submitted on briefs December 7, 2004.—Decided
January 25, 2005.*

2005 WI App 30

(Also reported in 693 N.W.2d 121.)

† Petition to review denied 4-6-2005.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John P. Higgins* of *Guttormsen, Hartley, Guttormsen, Wilk & Higgins*, of Kenosha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Daniel I. Hanrahan* of *Quarles & Brady, LLP*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Patricia Moran and her husband Frank Moran appeal from a summary judgment dismissing their complaint against Milwaukee County and Global Aerospace, Inc., Milwaukee County's insurance carrier, in connection with the Morans' personal-injury claim against Milwaukee County. The only issue is whether WIS. STAT. § 893.80(1)(a) bars that claim. The trial court ruled that it does. We affirm.

## I.

¶ 2. Patricia Moran alleges that she was injured when, on November 22, 2000, she tripped over what her complaint calls a "sign plate in the parking garage of General Mitchell International Airport." She filed this action against Milwaukee County and Global on May 21, 2003.

¶ 3. Lawsuits against governmental entities like Milwaukee County are regulated by WIS. STAT. § 893.80(1). It provides, with the parts material to this appeal in italics:

> Except as provided in subs. (1g), (1m), (1p) and (8), *no action may be brought* or maintained *against any* volunteer fire company organized under ch. 213, *political corporation, governmental subdivision or agency thereof* nor against any officer, official, agent or employee of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

749

(a) *Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the* volunteer fire company, *political corporation, governmental subdivision or agency* and on the officer, official, agent or employee *under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the* fire company, *corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant* fire company, *corporation, subdivision or agency* or to the defendant officer, official, agent or employee.

(Italics added.)[1] Thus, a notice is not "requisite notice" under § 893.80(1)(a) unless it:

- is served in the way set out in WIS. STAT. RULE 801.11 on the ultimate defendant "[w]ithin 120 days after the happening of the event giving rise to the claim";

- describes "the circumstances of the claim"; and

- is signed by either the party or his or her "agent or attorney."

If all of this is not done, the action must be dismissed unless the plaintiff can prove "that the delay or failure to give the requisite notice has not been prejudicial to the defendant." § 893.80(1)(a). "The plaintiff has the burden of proving the giving of notice or actual notice and the nonexistence of prejudice." *Elkhorn Area Sch.*

---

[1] The exceptions listed in WIS. STAT. § 893.80(1) do not apply here.

*Dist. v. East Troy Cmty. Sch. Dist.*, 110 Wis. 2d 1, 5, 327 N.W.2d 206, 208 (Ct. App. 1982).

¶ 4. The Morans contend that Mrs. Moran gave the requisite 120–day notice under WIS. STAT. § 893.80(1) when, on December 5, 2000, she filled out part of a "Combined Report" on a document headed "General Mitchell International Airport." (Uppercasing omitted.) The report instructed the person completing the form to "check all that apply" and gave the following choices: "incident"; "accident"; "injury"; and "property damage." (Uppercasing omitted.) A heavy handwritten "X" appears next to "incident"; the others are blank. In response to the form's request for a "[d]etailed descrip- tion of what happened," Moran wrote: "tripped and caught right foot which I jammed knee on A [*sic*] bolted sign holder sticking out of ground with no sign on it. It was unmarked that day." The date of the "incident" was given as November 22, 2000. In response to the form's request to "[n]ote any apparent injuries or damage" there is an uppercased hand-printed "unk." In the place for "name, address and telephone # of any witnesses" is an "N/A." The trial court determined that this "Com- bined Report" did not satisfy § 893.80(1), and, further, that although Mrs. Moran sent to the Milwaukee County Clerk and the airport's director a document dated April 1, 2002, that purported to be a formal "Notice of Injury under Section 893.80," the Morans had not shown that Milwaukee County was not prejudiced.

## II.

¶ 5. As noted, the trial court decided this case on summary judgment. Our review of a trial court's grant of summary judgment is *de novo. Green Spring Farms*

*v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). In order to survive summary judgment, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set[ting] forth specific facts," Wis. Stat. Rule 802.08(3), pertinent to that element, *Transportation Insurance Co. v. Hunzinger Construction Co.*, 179 Wis. 2d 281, 290–292, 507 N.W.2d 136, 139–140 (Ct. App. 1993). This appeal turns on two matters. First, whether the Morans gave the requisite Wis. Stat. § 893.80(1) notice to Milwaukee County. Second, if not, whether they have established that there are facts that demonstrate Milwaukee County was not prejudiced. Prejudice *vel non* is, however, a legal issue that we decide *de novo*. *Olsen v. Township of Spooner*, 133 Wis. 2d 371, 379, 395 N.W.2d 808, 811 (Ct. App. 1986). We discuss these matters in sequence.

A. *Wisconsin Stat. § 893.80(1)*.

¶ 6. As we have seen, Wis. Stat. § 893.80(1)(a) requires that the 120–day notice be both "signed by the party, agent or attorney," and, also "served on the . . . political corporation, governmental subdivision or agency . . . under s. 801.11." The December 2000, "Combined Report" satisfies neither of these requirements. First, contrary to the Morans' representations in their appellate briefs, the December 5, 2000, "Combined Report" was not signed by either Patricia Moran or her agent or attorney. Second, Wis. Stat. Rule 801.11(4)1 requires that counties be served by serving "the chairperson of the county board or the county clerk." The December 2000, "Combined Report" was not served on

either the chairperson of the Milwaukee County board or on the Milwaukee County clerk, and thus the Morans did not comply with RULE 801.11(4)1. *Cf. Medley v. City of Milwaukee*, 969 F.2d 312, 320 (7th Cir. 1992) (service of § 893.80 notice on the United States Department of Housing and Urban Development not service on City of Milwaukee even though Department may have forwarded notice to the City). Accordingly, we must now turn to whether the Morans have established that Milwaukee County was not prejudiced by their failure to comply with the formal-notice requirements of § 893.80(1).

B. *Prejudice.*

¶ 7. As noted, whether a plaintiff has proven that the governmental entity was not prejudiced by the plaintiff's failure to comply with the formal 120 day notice requirements of WIS. STAT. § 893.80(1) is a legal issue subject to our *de novo* review. *Olsen*, 133 Wis. 2d at 379, 395 N.W.2d at 811. Section 893.80(1) is designed to ensure that the entity will have enough information —either formally by virtue of the 120 day notice, or *via* the lack-of-prejudice avenue—about the plaintiff's injury to be able to fully investigate "the circumstances giving rise to a claim." *Elkhorn Area Sch. Dist.*, 110 Wis. 2d at 5, 327 N.W.2d at 208. An irreducible minimum of this enough-information requirement is that the governmental entity know the "type of damage alleged to have been suffered by a potential claimant." *Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 220, 556 N.W.2d 326, 331 (Ct. App. 1996).

¶ 8. The Morans point to two documents that they say gave Milwaukee County sufficient notice so

that it was not prejudiced: (1) the December 5, 2000 "Combined Report," and (2) the April 1, 2002, formal "notice of injury." (Uppercasing omitted.)

1. *The December 5, 2000, "Combined Report."*

¶ 9. As we have seen, the only information material to our analysis given by the December 5, 2000 "Combined Report" was that:

- Mrs. Moran "tripped and caught [her] right foot which [she] jammed [her] knee on";

- Mrs. Moran tripped on an "unmarked" "bolted sign holder sticking out of [the] ground with no sign on it"; and

- Mrs. Moran's "apparent injuries" were "unk[nown]." (Uppercasing omitted.)

Although this revealed the "type of damage," *see id.*, 205 Wis. 2d at 220, 556 N.W.2d at 331, namely, that Mrs. Moran "jammed" her knee, it did not give any indication whether that was a serious or a superficial injury. As we discuss below, this is significant in assessing whether the Morans have proved that Milwaukee County was not prejudiced by their failure to give the requisite 120 day notice.

¶ 10. Mrs. Moran's April 1, 2002, "notice of injury" asserted that as a result of her tripping on the sign seventeen months earlier she "has suffered an injury to her right knee, which has required surgery, as well as having developed tarsal tunnel syndrome and RSD [Reflex Sympathetic Dystrophy] to the right lower extremity." Also, on May 14, 2002, Mrs. Moran filled out a questionnaire given to her by an adjuster for Milwaukee County and wrote that she was working at the

airport the day she tripped over the sign holder but was, as of May 14, 2002, "disabled." The December 2000 "Combined Report," however, gave no notice that Mrs. Moran's injuries were or could be that serious. *Cf. Olsen*, 133 Wis. 2d at 377–378, 395 N.W.2d at 811 (mere knowledge that property was affected by construction was not sufficient for governmental entity to assess claimed damage). Thus, although Milwaukee County took two photographs of the sign holder, the County had no reason or duty to investigate further. Simply put, it is contrary to the protection afforded by Wis. Stat. § 893.80(1) to force a government entity to spend resources and taxpayer money to investigate every injury where the requisite 120 day notice is not given on the mere chance that the injury may turn out to be catastrophic, irrespective of how minor it may seem initially. As of the December 5, 2000, "Combined Report," as far as Milwaukee County knew, Mrs. Moran's tripping-related injury was not serious.

2. *The April 1, 2002, "Notice of Injury."*

¶ 11. Mrs. Moran's April 1, 2002, "notice of injury" did, for the first time, alert the County that her claimed injuries were serious. (Uppercasing omitted.) This was fleshed out by Mrs. Moran's May 14, 2002, handwritten questionnaire answers, which asserted that:

- Mrs. Moran was "working at the Hertz car rental inside counter" at the airport that day;

- she tripped in the "late afternoon" while walking in the airport's parking garage "from Hertz car rental . . . to the Hertz Gold Booth in the parking garage";

755

- she did not "completely fall," but "[i]t took a few steps to slow down the momentum" of her tripping;

- she "was in a lot of pain and limp[ing]," and "went to the gold booth [and] got what [she] needed";

- she "[w]ent back to the airport" and "told a couple of the girls what happened"; and

- she "tried to work a bit more but was hurting so [she] went home."

Mrs. Moran's handwritten May 14 report also alleged that she "still [has] problems with pain," that she "take[s] a lot of medication," that she was seeing a physical therapist twice a week, and that she has not "really resumed [her] normal life at all!"

¶ 12. Although, we can assume that, like the Town of Silver Cliff in *Nielsen v. Town of Silver Cliff*, 112 Wis. 2d 574, 334 N.W.2d 242 (1983), Milwaukee County could now assess the nature and extent of Mrs. Moran's treatment, Mrs. Moran was unable in 2002, and is unable now, to tell Milwaukee County: (1) who might have seen her trip; (2) who saw her immediately after she tripped; or (3) to whom she spoke after the accident. Indeed, in a July 12, 2002, letter from her lawyers to the adjuster for Milwaukee County, Mrs. Moran indicated that although she was not working for Hertz, but, rather, Shared Technologies Cellular, "[s]he would visit the [Hertz] gold booth approximately once each day she worked," and "[t]hough there were individuals at the gold booth on the day of the accident," she did "not recall their names." Milwaukee County has no way apparent from this record of investigating the

contemporaneous impressions that are essential to properly assess both a plaintiff's story of injury and the County's share of potential liability for that injury. Milwaukee County is stuck with Mrs. Moran's recollections. Thus, *Nielsen*, upon which the Morans rely, is inapposite because although in that case the Town was told late that Randall Nielsen hurt his back when he lifted "a large stone monument" off a child's leg on which it had fallen, *Nielsen*, 112 Wis. 2d at 575–576, 334 N.W.2d at 243, there was no indication that the Town was thereby prevented from learning from witnesses what had happened, *id.*, 112 Wis. 2d at 581–582, 334 N.W.2d at 246. Indeed, the insurance company's claims manager in *Nielsen* conceded that the company's investigation was not prejudiced. *Id.*, 112 Wis. 2d at 582, 334 N.W.2d at 246. The situation here is different and, on our *de novo* review, we agree with the trial court that the Morans have not satisfied their burden of showing that Milwaukee County was not prejudiced by their failure to give the requisite 120 day notice under Wis. Stat. § 893.80(1).

*By the Court.*—Judgment affirmed.

¶ 13. WEDEMEYER, P.J. (*dissenting*). I write separately because, based on the facts presented, I would reverse the trial court's decision and remand for further proceedings.

¶ 14. The purpose of Wis. Stat. § 893.80(1)(a) is to give the governmental unit notice that an injury has occurred and offer it an opportunity to investigate. *Nielsen v. Town of Silver Cliff*, 112 Wis. 2d 574, 580, 334 N.W.2d 224 (1982). The statute requires the injured party to identify the circumstances of the claim within 120 days of the event. *Probst v. Winnebago County*, 225 Wis. 2d 753, 757–58, 593 N.W.2d 478 (Ct. App. 1999).

757

¶ 15. Here, there is no dispute that the December 5 incident report was a written report provided to the County within the 120–day notice period. The dispute concerns whether the information provided therein is sufficient to put the County on notice that Patricia may file a claim. I conclude that the incident report, although not ideal, satisfies the basic requisites of the statute. The report was filled out by Patricia, who provided her printed name, address and description of what happened. It identified the accident site, the cause of the accident, and the fact that she injured her knee. In response to the report, the County inspected the accident site, took photographs, and removed the hazard. Thus, the report satisfied both purposes of the statute.

¶ 16. The trial court ruled in favor of the County because the December 5 report was marked "incident" only and not marked "injury." I do not find this factor dispositive. Although it would have been preferable if Patricia had marked both boxes, the substance of the report clearly revealed that she injured her knee during the incident. This was sufficient to provide notice to the County that an injury occurred. The case law does not require strict compliance with the statute, *DNR v. City of Waukesha*, 184 Wis. 2d 178, 198, 515 N.W.2d 888 (1994); rather, it demands only substantial compliance, *see State v. Town of Linn*, 205 Wis. 2d 426, 435, 556 N.W.2d 394 (Ct. App. 1996).

¶ 17. My review demonstrates that the December 5 report constitutes substantial compliance with the notice of injury statute. The report provided the County with the basic circumstances of the incident and indicated that Patricia had hurt her knee as a result of the incident. As a direct result of the report, the County

conducted an investigation, took photographs to preserve the evidence, and removed the sign which caused the problem.

¶ 18.　　Based on the foregoing, I conclude that the trial court erred in dismissing the Morans' complaint. I would reverse the judgment and remand the matter for further proceedings consistent with this opinion.